# IN THE SUPREME COURT OF TEXAS

══════════
No. 11-0934
══════════

LIBERTY MUTUAL INSURANCE COMPANY, PETITIONER,

v.

RICKY ADCOCK, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
══════════════════════════════════════════════

JUSTICE GREEN, joined by CHIEF JUSTICE JEFFERSON and JUSTICE HECHT, dissenting.

The Court today holds that, once awarded, lifetime income benefits (LIBs) are irrevocable and must be paid for the rest of a claimant's life, even when it can be established at a later date that the claimant's injury is no longer total and permanent. While the Court's rationale makes sense for anatomical losses, it defies reason for functional losses. Advances in medicine and science offer previously unforeseen therapies and treatments that enable some persons who once seemed permanently injured to regain functionality. The Court says none of this matters, that the Legislature intended to foreclose any reopening of a finding of total and permanent loss of use, even when evidence would show that the claimant has recovered. Because I read the Labor Code's scheme governing income benefits as giving the Texas Department of Insurance, Division of Workers'

Compensation (the Division) jurisdiction to ensure that only claimants who meet the statutory eligibility criteria receive LIBs, I respectfully dissent.

## I. Background

In March 1991, Ricky Adcock sustained on-the-job injuries to his right foot and his right hand. Six years later, he was awarded LIBs. Liberty Mutual, the worker's compensation insurance carrier for Adcock's employer, did not appeal that decision to the trial court and began issuing payments pursuant to the order.[1] More than ten years later, Liberty Mutual sought a new hearing, asserting that it had received video evidence of Adcock walking and handling objects, indicating that his condition had improved enough that he no longer had total and permanent functional loss of his ankle and hand, and he was therefore not entitled to LIBs. At a contested case hearing, the parties agreed on the following questions to be certified to the hearing officer:

> (1) Is [Adcock] entitled to lifetime income benefits (LIBs) as of this date based on total and permanent loss of use of his hands and legs?
>
> (2) As a result of the decision and order of Appeals Panel in Appeal No. 970981, does the Division have jurisdiction to determine continuing entitlement to lifetime income benefits (LIBs)?

The video evidence presented at the hearing clearly demonstrated that, at one time, Adcock could walk and handle objects. The hearing officer issued its decision and order, finding that it had jurisdiction to hear the case but that, despite the video evidence, Adcock remained entitled to LIBs. The appeals panel affirmed. Adcock appealed to the district court, arguing that the Division lacked

---

[1] If a party disputes the appeals panel decision, it "may seek judicial review by filing suit not later than the 45th day after the date on which the [D]ivision mailed the party the decision of the appeals panel." TEX. LAB. CODE § 410.252(a). "A decision of the appeals panel regarding benefits is final in the absence of a timely appeal for judicial review." *Id.* § 410.205(a).

jurisdiction to hear the case under section 408.161 of the Labor Code, and asserting res judicata and collateral estoppel.

## II. The Division's Jurisdiction

The Court holds that jurisdiction to determine continuing eligibility for LIBs cannot be found in the plain language of the Act, and therefore our inquiry can go no further. I disagree. When construing a statute, "[w]e rely on the plain meaning of the text as expressing legislative intent unless a different meaning is . . . apparent from the context." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Additionally, we are not constrained to the text of the statute if "the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). I believe that disallowing the Division jurisdiction in these cases will lead to absurd and nonsensical results, which the Legislature did not intend.

### A. The Statute Indicates Jurisdiction to Consider Continuing Eligibility to Receive LIBs

Section 408.161 of the Texas Labor Code provides that "[l]ifetime income benefits are paid until the death of the employee" when an impairment qualifies under the statute. TEX. LAB. CODE § 408.161(a). Additionally, "the total and permanent loss of use of a body part is the loss of that body part" for purposes of entitlement to LIBs. *Id.* § 408.161(b). The Division is charged with reviewing an employee's condition and awarding LIBs when the claimant is entitled to them. *See id.* § 402.00114 (providing that "the division shall: (1) regulate and administer the business of workers' compensation in this state; and (2) ensure that this title and other laws regarding workers' compensation are executed"); *see also id.* § 408.161 (establishing the requirements for entitlement to LIBs). As the Court explains, administrative agencies are creatures of the Legislature and,

3

therefore, may exercise only the powers the Legislature confers upon them in clear and express language. ___ S.W.3d at ___; *Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377–78 (Tex. 2005). As the Court also recognizes, however, "[w]hen the Legislature expressly confers power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties." *Lakeshore Util. Co.*, 164 S.W.3d at 378. "In deciding whether an agency has acted within its powers, a court should also determine whether an agency's power is *implied in the statute*." *Id.* at 377–78 (emphasis added). We recently held in *American Zurich Insurance Co. v. Samudio*, 370 S.W.3d 363 (Tex. 2012), that the trial court had the power to remand an impairment rating decision to the Division even though "the statute [was] silent as to the court's power to remand" because the "regulatory scheme as a whole illustrate[d]" that was the Legislature's intent. 370 S.W.3d at 368. Likewise, the overall income benefit scheme indicates the Legislature's intent for the Division to have jurisdiction to consider continuing eligibility for LIBs.

We determine legislative intent by reading the statute as a whole and interpreting the legislation to give effect to the entire act and not just its isolated portions. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). We may be "aided by the interpretive context provided by the surrounding statutory landscape." *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 75 (Tex. 2011) (internal quotation marks omitted). The Division is charged with the duty to "administer and operate the workers' compensation system." TEX. LAB. CODE § 402.001(b). And it must "provide appropriate income benefits and medical benefits in a manner that is timely and cost-effective." *Id.* § 402.021(b)(3). As the Division is charged with the efficient and cost-

4

effective administration of benefits, it follows that the Legislature intended that the Division have the power to ensure that those who are permanently impaired receive just compensation and those whose impairments are not permanent do not receive a windfall. Without the implied power to determine continuing eligibility for LIBs, the Division could not ensure that income benefits are administered in a cost-effective way. It is unlikely that the Legislature would require the workers' compensation system and its carriers to allocate resources in such a way as to require the payment of lifetime benefits, often for decades, to workers who do not meet the statutory criteria.

Although we held in *Texas Mutual Insurance Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012), that a common law cause of action for breach of the duty of good faith and fair dealing against a workers' compensation insurance carrier "operate[d] outside the administrative processes and other remedies in the Act and [was] in tension with . . . the Act's goals or processes," *id.* at 450, here an action to determine continuing eligibility for LIBs is not in tension with the Act; rather, it is consistent with the Legislature's intent to give the Division the responsibility of properly administering benefits. I agree with the Court that the Legislature has enacted a comprehensive scheme for workers' compensation. ___ S.W.3d at ___. As discussed below, however, the Legislature cannot and need not envision every circumstance that may arise in the workers' compensation context. And the Court should not be required to order absurd results if the Legislature happened to leave a particular circumstance unaddressed. *See R.R. Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992) (noting that requiring the Legislature to anticipate all circumstances would defeat the purpose of delegation).

As Adcock and the Court point out, other income benefits in the Act, such as supplemental income benefits and temporary income benefits, have a cap on the length of time an employee may receive benefits, while an award of LIBs does not. *See* ___ S.W.3d at ___ (citing TEX. LAB. CODE §§ 408.0041(k), .011(16), .101, .1415(a), .147(a), .149(a), .151(b)). Adcock and the Court argue this is significant and indicates the Legislature's intent that LIBs be awarded until the claimant dies, regardless of whether his condition may have improved. But the Legislature's use of "lifetime" does not mean there can be no cap; rather, it denotes the maximum possible duration of the benefit—an employee is eligible to receive up to a lifetime's worth of benefits, but he is entitled to those benefits only if he meets the statutory condition. Section 408.161 provides that LIBs "are to be paid until the death of the employee *for*" the total and permanent loss, or loss of use, of statutorily specified body parts. TEX. LAB. CODE § 408.161(a) (emphasis added). The word "for" limits the required payment of LIBs, thus conditioning the entitlement to LIBs upon a total and permanent loss of, or loss of use of, those body parts. *Id.* § 408.161(a), (b). As long as an employee is still entitled to the LIBs by virtue of his condition, the award is indefinite. So, while the Legislature did not expressly provide for a review process of a grant of LIBs, the plain language of the statute signals the Legislature's intent to allow the Division to ensure that LIBs are paid only to those entitled to them and that those entitled to them are actually receiving the benefits.

The Court argues that because the provisions governing death income benefits (DIBs)—a form of permanent benefit that is paid to a deceased employee's beneficiaries until the occurrence of a specified event—contain no procedure for ensuring continuing eligibility, LIBs must likewise be paid in perpetuity with no mechanism for ensuring continuing eligibility. *See* ___ S.W.3d at ___

(citing TEX. LAB. CODE §§ 408.181(a), .181(d), .182, .183). But the Court misses a critical difference—death *is* permanent; loss of use may be, but only time will tell. DIBs are paid until triggering events that are sure to occur—either beneficiaries will reach a certain age, or they will die, for example. *See* TEX. LAB. CODE § 408.183. LIBs for anatomical losses work the same way—they *are* permanent, even when a claimant uses a prosthesis and is thus fully functional. LIBs for functional losses such as Adcock's are different, however. They are paid "for" the total and permanent loss of use of certain body parts—something that lacks the certainty of death and amputations.[2]

The Court holds, and I agree, that the Division has jurisdiction to later consider a claimant's eligibility for LIBs when LIBs have previously been denied. *See* ___ S.W.3d at ___. Just as the Act must be construed to impliedly allow an injured employee to subsequently establish eligibility for LIBs based upon a change of condition after LIBs were denied, the Act should also be construed to impliedly allow an insurance carrier to establish, based upon a change of condition, that eligibility no longer exists for a claimant receiving LIBs. The Legislature must have intended an effective and efficient exercise of the Division's power to award LIBs, including the power to assess LIB entitlement, whether previously awarded or previously denied, to determine if the statutory criteria for receipt of benefits are satisfied. *See Samudio*, 370 S.W.3d at 368–69 (explaining that the overall

---

[2] The Court also argues that because LIBs, like DIBs, can be paid through a non-assignable annuity, the Legislature must intend that there be no mechanism other than the claimant's death to end the payment of LIBs. ___ S.W.3d at ___. That the Legislature allows payment through an annuity for benefits that truly are permanent—DIBs and LIBs for anatomical losses—however, does not mean that the Legislature intends to foreclose a process to ensure that claimants receiving LIBs for functional losses are actually entitled to those benefits.

regulatory scheme suggested that the trial court had the authority to remand to the Division despite the lack of an express provision in the statute).

I recognize that we are to construe the Act liberally in favor of employees and not supply "by implication restrictions on an employee's rights." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 350 (Tex. 2008) (orig. proceeding) (quoting *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000)). However, the Legislature could not have intended that "liberally construing the statute" would include permitting employees who are not entitled to LIBs to receive them. Moreover, this interpretation does not act as a "restriction" on an employee's rights because an employee does not have a right to LIBs unless his or her injury qualifies under the statute. A contrary interpretation of section 408.161 would lead to nonsensical results. *See Kimbrell*, 356 S.W.3d at 411.

The Court holds that the words "total and permanent" and "death" foreclose the Division from evaluating a claimant's continuing eligibility to receive LIBs. ___ S.W.3d at ___, ___. But the determination that an injury is permanent can be "nothing more than a prediction" that the condition will continue indefinitely. *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 338 (Tex. 1963), *superseded by rule on other grounds as recognized in Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007); *cf. Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 272 (Tex. 2004) (defining a permanent nuisance as an activity which is presumed to continue indefinitely). We have explained that the "injuries enumerated in section 408.161 all result in impairments," *Ins. Co. of State of Pa. v. Muro*, 347 S.W.3d 268, 275 (Tex. 2011), and "impairment" is defined in the Act to include an injury that "is reasonably presumed to be permanent," and therefore may change at a later time. TEX. LAB. CODE § 401.011(23)

("'Impairment' means any anatomic or functional abnormality or loss existing after maximum medical improvement that results from a compensable injury and is reasonably presumed to be permanent."). Although LIBs are awarded on a presumption that an impairment will continue indefinitely, with modern medicine and science we cannot preclude the possibility that a functional impairment may improve. The workers' compensation system and the individual carrier should not have to continue to pay LIBs in the rare and fortunate event that a LIB claimant's condition improves and the claimant no longer has total and permanent loss of use. I agree with Liberty Mutual and the Division that the Division must have jurisdiction to determine a claimant's continuing eligibility for LIBs when there is evidence that his or her impairments are no longer total and permanent.

**B. The Division's Interpretation of the Statute Is Entitled to Serious Consideration**

If a statute is ambiguous, "[c]onstruction of [that] statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 623 (Tex. 2007) (internal quotation marks and citation omitted); *see R.R. Comm'n. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011) ("We have stated this principle in differing ways, but our opinions consistently state that we should grant an administrative agency's interpretation of a statute it is charged with enforcing some deference."). In this case, both the hearing officer and the appeals panel held that the Division had jurisdiction to consider continuing eligibility to receive LIBs under section 408.161, and the Division has taken that position throughout these proceedings. The appeals panel reached a similar result in a decision the parties refer to as *Deep East Texas Self Insurance Fund*, Appeals Panel No. 020432-s,

2002 WL 971079 (Tex. Workers' Comp. Comm'n Apr. 10, 2002), in which an insurance carrier challenged the claimant's continuing entitlement to LIBs and sought to show that the claimant fraudulently obtained the award. *Id.* at \*1–2. The appeals panel held that the Division had jurisdiction to consider a claimant's continuing entitlement to LIBs, but the court of appeals in this case disagreed with the appeals panel's reasoning in *Deep East Texas*, concluding that because the insurance company was claiming fraud, it should have sought a remedy under section 415.031. 353 S.W.3d 248, 252 (Tex. App.—Fort Worth 2011, pet. granted); *see* TEX. LAB. CODE § 415.031 (allowing any person to initiate administrative violation proceedings). Unlike *Deep East Texas*, however, Liberty Mutual does not contend that Adcock obtained his LIBs by fraud; it merely challenges his continuing eligibility for LIBs. As I have discussed, it is reasonable and does not contradict the plain language of the statute to construe section 408.161 as impliedly allowing the Division to have jurisdiction to determine eligibility for LIBs. Therefore, I see no reason that the Division's construction of the Act as conferring jurisdiction to determine Adcock's continuing eligibly for LIBs should not be afforded serious consideration.

The Court asserts that the Legislature knows how to provide for review of income benefit determinations, as it has done with temporary income benefits, and the lack of an express review provision in section 408.161 indicates the Legislature's intent to prohibit the Division from considering continuing eligibility to receive LIBs. ___ S.W.3d at ___. However, "[t]he Legislature is not required to set forth in detail all the provisions necessary to govern the agency in the performance of its functions." *Lone Star Gas Co.*, 844 S.W.2d at 689 (quoting *State v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 273 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd))

10

(internal quotation marks omitted). Liberty Mutual asserted at oral argument that typically in LIB cases the functional loss of use of an appendage worsens over time, so a determination of a claimant's continuing eligibility for LIBs is not necessary. Just because the Legislature did not expressly provide for this unusual situation does not mean that it did not intend for the Division to possess the power to carry out its duties to effectively distribute workers' compensation benefits. *Cf. Samudio*, 370 S.W.3d at 368–69 (explaining that, despite the lack of an express provision in the Workers' Compensation Act, trial courts nevertheless have the authority to remand cases to the Division as evinced by the overall statutory scheme).

As the Court points out, article 8306, section 12d of the former Workers' Compensation Act gave the reviewing commission power "to review any award or order, ending, diminishing or increasing compensation previously awarded" based on "a change of condition, mistake or fraud," a provision that is absent from the current Act. Act of May 20, 1931, 42d Leg., R.S., ch. 155, § 1, art. 8306, 1931 Tex. Gen. Laws 260, 260–61, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2d C.S., ch. 1, § 16.01(7), art. 8306, 1989 Tex. Gen. Laws 114, 114. The current Act provides for specific review within each particular type of benefit. *See* 353 S.W.3d at 250 (explaining the review systems for supplemental and temporary income benefits). The absence of a broad review provision does not necessarily indicate the Legislature's intent to deprive the Division of jurisdiction, as the Court contends. While the Legislature's omission of a provision from an old statute to a new may signal an intent to change the law, *see Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009), it may also signal a change in the statutory scheme, as is the case here. *See Jones v. Fowler*, 969 S.W.2d 429, 432–33 (Tex. 1998) (holding that the Legislature did not intend the deletion of a

11

statutory provision in the Family Code to be a substantive change in light of changes to the entire statutory scheme). Under the former statute, benefits were paid "predictively," meaning that they were set "at the time of adjudication based on a prediction of the injury's future impact on employment." *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 516 (Tex. 1995). The current Act instead pays long-term benefits retrospectively, where "benefits are adjusted periodically over time based on actual lost wages for that period." *Id.* The Legislature did not merely amend the former statute and deliberately leave out the review provision; it significantly overhauled the entire workers' compensation system, including provisions for how claims are evaluated and benefits are awarded. *See id.* at 513. A difference in language, therefore, is less indicative of intent in this circumstance. I recognize that the Legislature knows how to provide for review, as it did so with the other compensation schemes. *See* 353 S.W.3d at 249–50. It follows then that the Legislature also knows how to expressly prohibit the Division from considering continuing eligibility for LIBs. It did not do so here. I believe that the Legislature intended for the Division to have jurisdiction to determine continuing eligibility for an award of LIBs.

The Court characterizes the issue in this case as one of re-opening a previous LIB adjudication. ___ S.W.3d ___, ___. I view Liberty Mutual's claims as seeking a new determination of Adcock's continuing eligibility to LIBs. As a new claim, as opposed to an appeal of the original LIB award, the Division's process for determining a claimant's continuing eligibility for LIBs should be the same as an original determination to grant or deny benefits. A claimant or insurance carrier may request a benefit review conference by giving notice to the other parties after attempting to resolve the dispute. *See* Tex. Lab. Code §§ 410.023–.025; 28 Tex. Admin. Code § 141.1. If the

parties cannot resolve their dispute at the benefit review conference or arbitration, the parties may proceed to a contested case hearing, where a Division hearing officer hears the dispute and makes a record of the proceedings. *See* TEX. LAB. CODE § 410.151. The parties may then appeal that decision to the Division's appeals panel. *See id.* § 410.202. Further, the Act provides the Division with the power to monitor carrier actions. *See id.* § 414.002(a). It lists numerous actions that constitute administrative violations by an insurance carrier, including a carrier's contest of a claim to benefits when evidence clearly indicates liability. *See id.* § 415.002. The Act allows for sanctioning and penalties when carriers violate such provisions of the Act, and therefore guards against potential harassing actions by carriers against claimants receiving LIBs. *See id.* § 415.021(a).[3] Because the Act already provides a procedure for contesting a claimant's current eligibility to benefits, there was no need for the Legislature to include a separate provision in the statute.

### III. Conclusion

Section 408.161 awards LIBs for functional impairments that equate to a total and permanent loss of body parts and other serious life-altering injuries. It is impossible for the Division or anyone else to know whether loss of use will actually be total and permanent. When, by good fortune or advances in medical science, a claimant's impairments improve so that he no longer meets the

---

[3] Although not raised by the parties, I do not believe that section 410.209 of the Labor Code, which provides for reimbursement of funds to an insurance carrier who has overpaid a claimant, applies in cases such as this. *See id.* § 410.209. Liberty Mutual and the Division do not contend that Adcock was not entitled to LIBs in 1997, and thus they are not arguing that the Division should "revers[e] or modif[y]" that decision as is required to trigger potential reimbursement. *See id.* Rather, I view this is an entirely new determination of a claimant's current entitlement to LIBs and not an appeal of the original grant of LIBs.

statutory eligibility criteria for LIBs, he should not receive a windfall, as the Court would hold, merely because the Legislature failed to provide for this unique circumstance. Surely the Legislature did not intent such a nonsensical result. I would hold that the Division, which is charged with the effective administration of income benefits, has jurisdiction to consider a claimant's continuing eligibility to receive LIBs. I respectfully dissent.

_____
Paul W. Green
Justice

OPINION DELIVERED: August 30, 2013